IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **MACK S. SMITH,** | : | **MOTION TO VACATE** |
| Movant, | : | **28 U.S.C. § 2255** |
| | : | |
| v. | : | **CRIMINAL INDICTMENT NO.** |
| | : | **1:08-CR-0043-CC-AJB-3** |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent. | : | **CIVIL FILE NO.** |
| | : | **1:12-CV-3153-CC-AJB** |
| | : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence entered in this Court under the above criminal docket number. The matter is before the Court on the motion to vacate, [Doc. 230], the government's answer-response, [Doc. 239], Movant's motion to amend, [Doc. 246], and the government's response to the motion to amend, [Doc. 247]. For reasons discussed below, Movant's motion to amend is **DENIED** and it is **RECOMMENDED** that his motion to vacate be **DENIED**.

I. **Background**

The United States Department of the Army Forces Command ("FORSCOM") makes decisions on the award of government contracts for water purification systems

AO 72A
(Rev.8/82)

used by the United States Army. [Doc. 1, Attach. at 3-4.] Movant's criminal action involved FORSCOM's award of Defense Department contracts to prime contractors (one of which was Stanley Associates) and sub-contractors (one of which was WATEC Inc., owned by Movant). [*Id.* at 5-6; Doc. 230, Mem. at 1-2.]

> Defendant Richard Long is a former civilian employee of the Army; he served as a Water and Petroleum Program Manager from 1991 to 2004. During that time, Long reviewed contract bids and supervised contractor performance for the Army's contracts for water purification equipment and services. Long also compiled contract requests, which included a statement of the work the Army needed and an estimate on how much the contract should cost.
>
> . . . .
>
> Long helped WATEC win contracts by providing WATEC employees with confidential information about the contracts and the government's pricing specifications before WATEC submitted its bid. WATEC would tailor its bid based on that information and set its price as close as possible to the price the government was willing to pay. This access to confidential information gave WATEC an advantage in the bidding process.
>
> Long also frequently wrote "sole-source justifications" that allowed the government to award contracts to WATEC without going through a competitive bidding process. Instead, the government awarded the contract directly to WATEC based on Long's assertion that WATEC was the only contractor capable of performing the work.
>
> The government awarded over $66 million in contracts to WATEC during Long's employment. During this time, [Movant] or WATEC made 55 payments to Long of between $1,000 and $75,000. The payments were

AO 72A
(Rev.8/82)

routed to accounts held by Long, his wife, or his wife's sister. The payments to Long totaled $549,700.

*United States v. Smith*, 429 Fed. Appx. 840, 842 (11th Cir. June 7, 2011).

The Grand Jury sitting in the Northern District of Georgia indicted Movant on the following counts: (1) conspiracy to commit honest services mail and wire fraud and to commit bribery of a public official; (2-40) bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A); (80-104) honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346; and (105) money laundering, in violation of 18 U.S.C. § 1957. [Doc. 1, Attach.] Although Long testified at trial that all of the payments from [Movant] were loans, a loan agreement did not exist, Long never paid back any of the money, and the jury did not credit the testimony that the payments were only loans. *See Smith*, 429 Fed. Appx. at 842-43. The jury found Movant guilty on Counts 2-39 and 80-105 for bribery, wire fraud, and money laundering – the jury found Movant not-guilty on Count 1, and Count 40 was dismissed on the government's motion. [Doc. 133 and Oral Order at entry dated 2/13/2009.] The Court sentenced Movant to a total term of 150 months of imprisonment. [Doc. 167.]

On appeal, Movant raised the following issue – he was deprived of his Sixth Amendment right for obtaining witnesses when the District Court allowed Mary Anne

3

Osborn to invoke her Fifth Amendment rights to avoid testifying. *Smith*, 429 Fed. Appx. at 843. The Eleventh Circuit found no error in the District Court's decision, and, on June 7, 2011, it affirmed the judgment against Movant. *Id.* at 844, 846.

In his § 2255 motion, Movant presents four grounds for relief. [Doc. 230 at 5-9.] Movant labels his grounds as Grounds Five through Eight, which numbering the Court follows: (5) ineffective assistance of trial counsel for failing to argue that there was a reasonable doubt that Movant was guilty under the bribery statute;[1] (6) appellate counsel provided ineffective assistance for failing to argue on appeal (a) the issue of Osborn's testimony as a matter of prosecutorial misconduct and (b) that the bribery conviction was invalid (as argued in Ground Five);[2] (7) prosecutorial misconduct for violating *Brady*[3] and failing to disclose the depth of exculpatory evidence Osborn could

---

[1] Movant's claim that appellate counsel was ineffective on the matters raised in Ground Five is addressed under Ground Six, in which Movant raises the same claim.

[2] Movant's claim in Ground Six – that appellate counsel was ineffective for failing to argue that the honest-services and money-laundering convictions were negated based on the invalidity of the bribery conviction – is addressed under Ground Eight, in which he raises the same claim.

[3] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good

4

provide and for initiating an investigation of Osborn for the purpose of obstructing her testimony in Movant's case; and (8) ineffective assistance of trial and appellate counsel for failing to argue that the honest-services and money-laundering convictions were negated based on the invalidity of the bribery conviction. [*Id*. at 5-9.]

## II.   28 U.S.C. § 2255 Standard

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief, however, is limited, and "[o]nce [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A "final judgment commands respect[, and] . . . a collateral challenge may not do service for an appeal." *Id.* at 165. Thus, "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *Gilbert v. United States*, 640 F.3d 1293, 1331 (11th Cir. 2011) (quoting *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000)) (internal quotation marks omitted), *cert. denied*,

---

faith or bad faith of the prosecution.").

5

_ U.S. _, 132 S. Ct. 1001 (2012). Further, a defendant "must assert all available claims on direct appeal," *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004), and claims that a § 2255 movant could have asserted on direct appeal, but did not, generally are procedurally barred absent (1) a showing of cause for the default and actual prejudice or (2) a showing of a fundamental miscarriage of justice or actual innocence, *McKay v. United States*, 657 F.3d 1190, 1196 (11th Cir. 2011), *cert. denied*, _ U.S. _, 133 S. Ct. 112 (2012).[4] Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage

---

[4] "[T]o show cause for procedural default, [a movant] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal . . . " or that the matter was not raised because of ineffective assistance of counsel. *Lynn*, 365 F.3d at 1235; *see also Reece v. United States*, 119 F.3d 1462, 1468 (11th Cir. 1997) (holding that, absent an "objective factor external to the defense" as cause, the movant must show that the default was caused by ineffective assistance of counsel (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted)). If a petitioner shows cause, he also must show prejudice – that the error complained of "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Reece*, 119 F.3d at 1467 (emphasis in original) (quoting *Frady*, 456 U.S. at 170) (internal quotation marks omitted). To make a credible showing of actual innocence, "a movant 'must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt' in light of . . . new evidence of innocence." *McKay*, 657 F.3d at 1196 (alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

6

of justice." *Lynn*, 365 F.3d at 1232 (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)) (internal quotation marks omitted); *see also Massaro v. United States*, 538 U.S. 500, 505-09 (2003) (holding that a constitutional claim of ineffective assistance of counsel generally is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts).

On collateral review, the defendant is no longer presumed innocent, the conviction is presumed valid, and it is the petitioner's burden to establish his right to relief. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69 (2009) (citing *Herrera v. Collins*, 506 U.S. 390, 399 (1993)); *Mackey v. United States*, 221 Fed. Appx. 907, 910 (11th Cir. Mar. 30, 2007) (stating that § 2255 movants have the "burden of establishing their right to relief from the judgment against them").

"An evidentiary hearing is not required when 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.' " *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting § 2255). That is the case here, as shown in the discussion below.

7

### III. Discussion

#### A. Ground Five

##### 1. Additional Background

At trial, Michael J. Trost, counsel for Movant, argued during opening that, although Long provided input on picking subcontractors, it was Stanley who decided which subcontractors it would use on the contracts that they had received for water work for the military; that it was Stanley who picked WATEC; and that it was primarily Stanley, not Long, that supervised the performance of the job. [Doc. 193 at 213-14, 224, 226.] In closing, Trost argued that the government's theory of a quid pro quo – of [Movant] giving money to Long for contracts – did not stand up based, in part, on the roles played by Stanley versus Long in picking WATEC. [Doc. 206 at 2626.] Trost argued that "[i]t was Stanley, not Mr. Long, not the government, but Stanley, after they got the contract, they decided to use WATEC." [*Id*. at 2634.] Trost reminded the jury that "it was Stanley who chose WATEC. It wasn't Mr. Long, it wasn't the government." [*Id*. at 2646.] Trost argued that the government had not substantiated that Movant had bribed Long – "You have heard no credible evidence that would permit you to believe that the process was corrupted. To the contrary, WATEC earned

8

the right to these contracts, which were issued in most cases, again, by Stanley, the prime contractor." [*Id*. at 2649.]

### 2. Parties' Arguments

Movant asserts that trial counsel provided ineffective assistance by failing to argue at trial that his bribery conviction was unsustainable (a) because Long lacked influence over the official acts of procuring a contract or task for Movant; (b) because Long lacked legal authority to make any decision as to who received a task or contract, Long's input as a technical consultant (and his intent to influence) in the award process was required (not corrupt), and Long's input was only one of many factors considered by the contracting officer; and (c) because Movant's lack of intent to influence Long is shown by the fact that the contracting officer picked a prime contractor (Stanley – who had sole authority to pick a sub-contractor) and Movant (who was one of several sub-contractors with Stanley) could have no reasonable expectation of benefitting from an attempt to influence the contracting officer to award a contract or task to Stanley. [Doc. 230, Mem. at 9-25.]

### 3. Law and Recommendation

A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Id.* at 690-92. The Court may resolve an ineffective assistance claim based on either of the above prongs. *Bottoson v. Moore*, 234 F.3d 526, 532 (11th Cir. 2000). Under the first prong, a petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Under the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The habeas petitioner has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. *Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting *Strickland*, 466 U.S. at 693) (internal quotation marks omitted). The petitioner has the burden of establishing his claim by a preponderance of competent evidence. *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc).

The statute governing bribery of public officials provides:

> Whoever--

> (1) directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent--
>
> (A) to influence any official act . . .
>
> shall be fined . . . or imprisoned . . . or both . . . .

18 U.S.C. § 201(b)(1)(A); *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999) (discussing elements of § 201(b)(1) as requiring a quid pro quo, giving of something of value to a public official with the specific intent to give "*in exchange* for an official act."). " '[O]fficial act' means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3). Official acts under § 201 are broadly defined and include "[e]very action that is within the range of official duty." *United States v. Moore*, 525 F.3d 1033, 1041 (11th Cir. 2008) (quoting *United States v. Birdsall*, 233 U.S. 223, 230 (1914)) (alteration in original) (internal quotation marks omitted) (discussing that congressman writing letters to urge officials to take favorable action constituted officials acts).

11

AO 72A
(Rev.8/82)

Movant admits that Long was a public official. [Doc. 230, Mem. at 10.] Further, Movant has not contested his payments to Long, but has referred to them as "loans." [Doc. 206 at 2626.] Thus, the element at issue is whether Movant gave the money to influence an official act. Movant is incorrect to define the relevant "official act" as only the actual granting of the contract, which he asserts Long lacked the authority to do. Here, the relevant official acts are Long's "reviewing and making recommendations concerning the awarding of government contracts, and his oversight of those contracts"[5] – Long's actions on matters brought before him. [Doc. 1, Attach. ¶ 17]; 18 U.S.C. § 201(a)(3). Movant does not contest that Long had authority to take those actions, and in fact admits that Long provided expertise to the contracting officer as to contractor qualifications and that his input was a factor considered by the contracting officer in awarding the contract or task. [Doc. 230, Mem. at 4-5, 16.] Thus the issue becomes whether [Movant] intended the money to influence Long's actions in reviewing and making recommendations concerning the awarding of government contracts.

---

[5] Because Movant focuses on the award of the contracts, the Court does not address Long's oversight of the contracts.

As stated earlier, on collateral review, it is Movant's burden to demonstrate that he is entitled to relief, which he fails to do. Movant fails to show any viable argument that counsel should have presented, but did not, to show that Movant did not intend the money to influence Long's actions (review and recommendations). As citations to the transcript above show, counsel did argue that the government's attempt to show a quid pro quo failed because Stanley, not Long, picked who it would use as a sub-contractor, i.e., WATEC. Movant fails to show that counsel was deficient on this matter. Although Movant states that Long lacked influence[6] over the official acts of procuring a contract or task for Movant, he admits that Long provided expertise to the contracting officer as to contractor qualifications and that his input as a technical consultant was a factor considered by the contracting officer in awarding the contract or task. [Doc. 230, Mem. at 4-5, 16.] That Long did not make the actual contracting decision, that he was required to provide input as a technical consultant, and that his input was one of other factors considered by the contracting officer do not show that Movant lacked intent to influence Long's review and recommendations. Movant has not shown that Counsel's failure to argue these issues was deficient.

---

[6] Movant's argument regarding Long's lack of influence focuses on Long's lack of authority to make the actual contracting decision and is addressed as such.

### B.   Ground Six

Movant asserts that appellate counsel provided ineffective assistance for failing to argue on appeal (a) the issue of the Osborne testimony as a matter of prosecutorial misconduct and (b) that the bribery conviction was invalid (as argued in Ground Five). [Doc. 230 at 6 and Mem. at 26-29.]

Claims of ineffective assistance of appellate counsel also are governed by the *Strickland* test. *Owen v. Fla. Dep't of Corr.*, 686 F.3d 1181, 1202 (11th Cir. 2012), *petition for cert. filed*, (U.S. Jan. 25, 2013) (No. 12-8439, 12A430). To succeed on a claim of ineffective assistance of appellate counsel, the movant must demonstrate deficient performance by counsel and demonstrate that, if counsel had not performed deficiently, there is a reasonable probability that the appellate outcome would have been favorable to the movant. *See Ferrell v. Hall*, 640 F.3d 1199, 1236 (11th Cir. 2011).

In his Memorandum in Support on Ground Six, Movant does not pursue or explain an ineffective-assistance-of-appellate-counsel claim in regard to prosecutorial misconduct and the Osborn testimony. [*Id.* at 26-29.] Accordingly, Movant fails to meet his burden to show that appellate counsel was ineffective on the matter of prosecutorial misconduct and the Osborn testimony. Further, as discussed above,

Movant's bribery arguments in Ground Five lack merit, and appellate counsel was not deficient for failing to raise those arguments.

### C.   Ground Seven

Movant asserts prosecutorial misconduct for violating *Brady* by failing to disclose the substance and depth of exculpatory evidence Osborn could provide and for initiating an investigation of Osborn for the purpose of obstructing her testimony in Movant's case. [Doc. 230, Mem. at 29-36.]

Because Movant did not raise this claim on direct appeal, it is procedurally defaulted. Although Movant states in Ground Seven that ineffective assistance of counsel was the reason he did not raise prosecutorial misconduct on direct appeal, as indicated above, Movant provides no argument as to how or why appellate counsel was ineffective on a claim of prosecutorial misconduct. [Doc. 230 at 8 and Mem. at 26-29.] Movant fails to make a showing sufficient to overcome his procedural default.

### D.   Ground Eight

Movant argues that trial and appellate counsel provided ineffective assistance for failing to argue that the honest-services and money-laundering convictions were invalid based on the invalidity of the bribery conviction. [*Id*. at 36-37.]

15

The *Strickland* standard stated above applies. As discussed earlier, Movant fails to show that trial or appellate counsel was ineffective in arguing that the bribery conviction was invalid. Thus, his related claim regarding the invalidation of his honest-services and money-laundering convictions must fail.

## IV.   Motion to Amend

On December 4, 2012, Movant filed a motion to amend.[7] [Doc. 246.] Movant seeks to add a claim of ineffective assistance of appellate counsel for failure to raise a claim based on *Skilling v. United States*,_ U.S. _, 130 S. Ct. 2896 (2010), that the jury instructions on honest-services fraud were overbroad and allowed the jury to return a general verdict. [Doc. 246 at 3-5.] The government asserts that Movant's motion should be denied because his claim is untimely and does not relate back to any timely-filed ground for relief. [Doc. 247.]

Movant's motion to amend was submitted for filing well over a year after Movant's convictions became final on September 5, 2011, ninety days after Movant's convictions were affirmed on June 7, 2011. *See Michel v. United States*, 519 F.3d

---

[7] Generally, a prisoner filing may be deemed filed on the day that the prisoner delivered it for mailing to prison officials, which, absent evidence to the contrary, is presumed to be the date on which he signed it. *Day v. Hall*, 528 F.3d 1315, 1318 (11th Cir. 2008) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001)).

16

1267, 1268 n.1 (11th Cir. 2008) (stating that convictions became final when time to seek a writ of *certiorari* in the United States Supreme Court expired, ninety days after the Eleventh Circuit Court of Appeals affirmed convictions). Accordingly, Movant's December 4, 2012, motion to amend is untimely. *See* 28 U.S.C. § 2255(f). Further, the motion cannot be considered timely under the relation back doctrine. *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) (holding that in order for an otherwise untimely claim to be deemed timely under the relation back doctrine, "the untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type' " (citations omitted)). The issue of appellate counsel's assistance on a *Skilling* claim does not share the same core facts as Movant's other claims and, thus, does not relate back to Movant's timely filed claims. Accordingly, the motion to amend shall be denied.

## V. <u>Certificate of Appealability (COA)</u>

Pursuant to Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Section 2253(c)(2) states that a certificate of appealability may issue "only if the

17

applicant has made a substantial showing of the denial of a constitutional right." Section 2253(c)(2) states that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." To satisfy that standard, a movant must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Lott v. Attorney Gen.*, 594 F.3d 1296, 1301 (11th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)) (internal quotation marks omitted).

> "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," . . . a certificate of appealability should issue only when the prisoner shows both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Jimenez v. Quarterman*, 555 U.S. 113, 118 n.3 (2009) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Based on the above discussion, it is recommended that a COA is unwarranted. If the Court adopts this recommendation and denies a COA, Movant is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under

18

Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts.

## VI.    Conclusion

For the reasons stated above,

**IT IS ORDERED** that Movant's motion to amend, [Doc. 246], is **DENIED**.

**IT IS RECOMMENDED** that Movant's motion, [Doc. 230], to vacate, set aside, or correct his federal sentence be **DENIED**, and that a COA be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion to the undersigned Magistrate Judge.

**IT IS SO ORDERED**, **RECOMMENDED**, **and DIRECTED**, this  27th  day of   February  , 2013.

                                                                                   _____
                                                                                   **ALAN J. BAVERMAN**
                                                                                   **UNITED STATES MAGISTRATE JUDGE**

AO 72A
(Rev.8/82)